TOMLINSON and SMITH, plaintiffs in error, *v.* THE PEOPLE, defendants in error.

On the trial of an indictment for having in possession a counterfeit bank note, with the intention of passing it, it is no defense that the bank note is not set forth in the indictment, and that no reason for omitting to set it forth is assigned in the indictment.

When a request to charge contains two propositions, one of which is right and the other wrong, it is not error in the court to refuse to charge as requested.

THIS case came before the court on writ of error. By the return, it appeared that an indictment in the following form was found in the New York General Sessions, against the plaintiffs in error:

" *City and County of New York, ss:*

The jurors of the People of the State of New York, in and for the body of the city and county of New York, upon their oath, present:

That William Smith, late of the first ward of the city of New York, in the county of New York, aforesaid, and John Tomlinson, late of the same place, on the thirteenth day of August, in the year of our Lord one thousand eight hundred and sixty-one, with force and arms at the ward, city and county aforesaid, feloniously had in their possession a certain forged and counterfeited negotiable promissory note, for the payment of money, to wit, the sum of five dollars, commonly called a bank note, purporting to have been issued by a certain corporation or company, called the Judson Bank, duly authorized for that purpose by the laws of the State of New York, a further description of which said last mentioned forged and counterfeited negotiable promissory note, for the payment of money, is to the jurors aforesaid unknown, with intention to utter and pass the same as true, and to permit, cause and procure the same to be so uttered and passed, with the intent to injure and defraud one Charles Meyer, and divers other persons to the jurors aforesaid unknown, he, the said William Smith and John Tomlinson, then and there well knowing the said last mentioned forged and counterfeited promissory note, for the payment of money, to be forged and counterfeited as aforesaid, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

NELSON J. WATERBURY, <em>District Attorney.</em>

On the 11th day of September, 1861, the prisoners were arraigned in court and pleaded not guilty.

The issue so joined came on to be tried on the 24th day of, September, 1861, before JOHN H. McCUNN, city judge, and a jury. The prosecution called as a witness,

*Charles Meyer*, who, being duly sworn, testified as follows: On the 13th August, 1861, prisoners William Smith and John

Tomlinson came into my store and asked for drinks; I gave them drinks, when Smith gave me a five dollar bill in payment and to change for drinks; I was suspicious of said bill, and went out and had it examined by a police officer; I then went back to the store and returned said bill to said Smith; it was a five dollar bill on the Judson Bank, Ogdensburgh.

Prisoners' counsel objected to any evidence being given of the bill, as it was not set out in the indictment, nor any reason alleged in said indictment why it was not set out. The court overruled the objections, and the prisoners' counsel then and there duly excepted.

*Cross-examined:* There were ten or twelve people in my store at the time; I heard Tomlinson say, "Show the bill to this man to see if it is bad," pointing to a man standing by.

*Patrick Taite* was then called and sworn for the prosecution. He testified as follows: I am a member of the Metropolitan Police; on the 13th August Mr. Meyer came outside his store and showed me a five dollar bill on the Judson Bank; it was, I believe, a counterfeit bill; I examined it by the light of a lamp outside the store.

Counsel for prisoners objected to the officer testifying as to the alleged forgery, as he was not an expert, nor acquainted with the signature of either of the officers of the said bank, nor was any bill produced in evidence to justify his testifying concerning it. The court overruled the objection, and counsel for prisoners excepted.

Witness continued: I then went into the store and arrested prisoners; I saw Mr. Meyer hand Smith the bill, and Smith held it in his hand, and when I attempted to arrest Tomlinson, he put the bill into his mouth and swallowed it.

Counsel for prisoners objected to the witness testifying anything as to the destruction of the bill, as there was no averment in the indictment that the bill was destroyed; but the court overruled the objection and admitted the evidence, and the prisoners' counsel excepted.

Witness continued: The bill Mr. Meyer showed me was, I

believe, on the Judson Bank of Ogdensburgh, State of New York, and was a five dollar bill.

Counsel for prisoners objected to the officer testifying to any description of the bill, as the bill was not produced, nor was there any averment in the indictment of the destruction of the bill, or any reason given why it could not be produced, or a full description of said bill given; but the court overruled the objection and admitted the evidence. Whereupon prisoners' counsel excepted.

*Cross-examined* by counsel for prisoners: I have only had one case of counterfeiting before this; I have not been employed by the police department in cases of forgery; I am not an expert in these cases; I have no knowledge of the signature of any of the officers of the Judson Bank of Ogdensburgh; I don't know that I ever saw a bill on the Judson Bank before that day; I have been in business (grocery business) and know something of money.

Counsel for prisoners then moved that as the officer was not competent to testify as to the alleged forgery, his testimony in that respect should be struck out; but the court denied the motion. Whereupon defendants' counsel excepted.

Witness continued : The bill Meyer showed me I believe to be a forgery; I examined the bill by gas light; had it in my hand; it was a counterfeit bill.

The prosecution then rested. Whereupon the counsel for the prisoners requested the judge to charge the jury that unless there was evidence of the forgery on the Judson Bank, they must acquit, and that there was no evidence of forgery on that bank. The judge refused so to charge, and the defendants' counsel excepted.

Counsel for the prisoners then requested the judge to charge the jury that, unless there was evidence that the alleged note was signed by some person òr persons as officers, or purporting to be officers of the Judson Bank of Ogdensburgh, without which it could not be a bank note, or an instrument in the form or similitude of a bank note, they could not convict. The judge stated the jury must so find the facts in order to

Tomlinson and Smith *v.* The People.

convict the defendants.    Whereupon the counsel for prisoners excepted.

Counsel for prisoners then requested the judge to charge the jury that, unless there was proof that such a bank as that laid in the indictment was in existence, they could not convict; but the judge declined so to charge.    Whereupon prisoners' counsel excepted.

The judge, amongst other things, charged the jury, that the *onus* of proving the non-existence of the bank was on prisoners, for the reason that said bill, on its face purporting to have been issued by the Judson Bank, was sufficient evidence of the existence of that bank, without other proof of that fact.    To this portion of the charge, the counsel for the prisoners excepted.

The jury then considered the case and rendered a verdict of guilty.    Whereupon the counsel for the prisoners moved, in arrest of judgment, that the indictment was bad for not averring the reason which made the note in question "unknown."    The indictment merely avers, "a bank note purporting to have been issued by a certain copartnership, "or company, called the Judson Bank, and to the jurors aforesaid unknown," but is bad and insufficient for not setting out the reason it was unknown.

The judge overruled the motion, whereupon prisoners' counsel excepted.

The prisoners were sentenced to imprisonment for five years in the State prison.

*William F. Howe,* for plaintiffs in error.

*First.* The note in question was not set out in the indictment, nor was any reason assigned in said indictment why it was not set out.    Therefore, the court erred in admitting the evidence of Charles Meyer, as to the description of the note. (*People* v. *Kingsley,* 2 *Cow. R.,* 522.)

*Second.* The court erred in admitting the evidence of Patrick Taite, who, not being an expert in the detection of counterfeit money, nor acquainted with the signatures of the officers

Tomlinson and Smith *v*. The People.

of the Judson Bank, was not competent to testify to the character of the alleged forged note.

*Third.* The court erred in admitting Taite's testimony as to destruction of the note, there being no averment in indictment that the note was destroyed.

*Fourth.* The court erred in permitting the officer to testify to a description of the note, as the bill was not produced in evidence, and as there was no averment in the indictment of its destruction, nor any reason given why it was not produced.

*Fifth.* The court erred in not granting the motion of plaintiffs' counsel to strike out Taite's testimony, on the ground that he was not an expert in the detection of counterfeit money, and had no knowledge of the signature of any of the officers of the Judson Bank.

*Sixth.* The court erred in refusing to charge the jury, as requested, that unless there was evidence of the forgery of a note on the Judson Bank, they must acquit; and, also, in refusing to charge that there was no legal evidence of the note in question being a forged note upon the Judson Bank.

*Seventh.* The indictment is bad, for not excusing, by proper averments, the omission to set out the note, and for not stating the reason why the note in question was unknown.

It should have alleged the loss or destruction of the note as a reason why it was not set out in the indictment and exhibited in court.

It is essentially necessary that every indictment for forgery should set forth the instrument charged as fictitious, in words and figures. (2 *Leach*, 808; 1 *East's Reports*, 180; 3 *Chitty's Criminal Law*, 1039.) Or the omission must be excused by proper averments. (8 *Mass. R.*, 110; 3 *Carr. & Payne*, 591.)

Again, if the instrument was lost, secreted or destroyed, the indictment should have alleged its loss, secretion or destruction. (*People* v. *Bagley*, 16 *Wend. R.*, 53.)

*Eighth.* All the testimony as to the alleged forgery, and of the description of the note, was improperly admitted, as the indictment gave no description of the note, nor averred any reason why it was not described.

The court erred in denying counsel's motion in arrest of judgment.

*S. B. Garvin,* for defendants in error.

*By the Court,* CLERKE, J.   No doubt the rule of the common law was, that, on an indictment for forgery or for uttering forged paper, it was generally necessary that the instrument alleged to be forged should be set forth in words and figures; and where this was omitted, the cause of the omission must have appeared in the indictment.   In cases, for instance, similar to the present, where the instrument had been destroyed by the prisoner, it could not, of course, be set forth precisely in words and figures; but it was essential that the cause of the inability to do this should affirmatively appear in the indictment. (*The People* v. *Kingsley,* 2 *Cow. R.,* 522.)   The reason alleged for setting out the instrument with this particularity was, to enable the court to see that it was one of those instruments which the law declared to be a crime falsely to make or knowingly to utter.   I do not see, however, that any such particularity was necessary for that purpose.   I should think, if the denomination of the bill and the name of the bank or the individual whose name was forged were set forth, that it would enable the court sufficiently to ascertain, at the trial, whether the offense of forgery, or uttering said bill, had been committed.   In some rare instances the omission may interfere with the proper preparation of the prisoner's defense; but I am strongly inclined to suspect that this rule arose from the extreme caution with which judges tried prisoners, who, if found guilty, would be liable to the punishment of death. For this was the punishment, for a long series of years, attached to forgery; and it was difficult for our courts and juries to avoid the belief that the punishment was too severe for the offense.   Consequently, when the penalty of death for this offense was abolished, the necessity of this particularity in the description of the instrument was repealed, so that, by the statute of 2 and 3 William IV, ch. 123, it is sufficient to describe the note as in a case of larceny.   Accordingly, in *Rex* v. *Burgess*

Tomlinson and Smith *v*. The People.

(7 *Carr. & Payne*, 490, 32 *Eng. Com. L. R.*, 723), it was held, under this statute, that it was unnecessary to set out the date of the instrument. It was held in *Rex* v. *James* (7 *Carr. & Payne*, 553, 32 *Eng. Com. L. R.*, 755), that in a count for forgery under the same statute, it was sufficient to charge that the prisoner " did forge a certain promissory note for the payment of £50." There are many similar cases in recent English authorities. No act similar to that of William IV has been passed by our legislature. I refer to it only for the purpose of showing that the particularity required by the common law was deemed a matter of form; and if the description minutely setting forth the instrument in words and figures was a matter of form, much more was the excuse for not conforming to this rule a matter of form. If it turned out on the trial, as in the case before us, that the prisoner had destroyed the instrument, how was he prejudiced by omitting in the indictment to state the reason why the instrument was not described precisely in words and figures? The defendant's own conduct furnishes the very best reason for the omission, and the mere statement of that conduct in the indictment could have been of no benefit to him, and could not have aided the administration of justice at the trial.

The omission, therefore, being the omission of a statement which must be deemed in this case, at least, a matter of form, is cured by the provision in the R. S., which declares that " no indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings therein be affected by reason of any defect or imperfection in matters of form, which do not tend to the prejudice of the defendant." (2 *R. S.*, 728, § 52.) This provision did not exist at the time of the decision in *People* v. *Kingsley* (2 *Cow. R.*, 522), to which I have already referred. The only provision then existing, relating to the strictness of the common law in regard to omissions in indictments, related only to the words, " with force and arms." This was afterwards enlarged by the revisers in that part of the Revised Statutes above quoted.

The only other objection taken by the counsel for the

plaintiff in error, that has any semblance of plausibility, is presented in his sixth point. If the judge was asked to charge the jury that unless there were evidence of the forgery of a note on the Judson Bank, they must acquit, he would have erred if he refused so to charge. But this request was accompanied as a part of the same proposition and sentence with the words, "and that there was no evidence of forgery on that bank."

The judge was correct in declining to put this proposition to the jury. Although the note was not produced, there was some evidence on the subject, and it was for them to determine its weight and credibility.

There was evidence against both defendants to enable the jury to pass upon their guilt.

The judgment should be affirmed.

Judgment affirmed.

---

SUPREME COURT. New York General Term, September, 1862. *Ingraham, Barnard,* and *Clerke,* Justices.